# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

MINI STUDIO, INC.,

       Plaintiff,

v.

KEVIN WANSA a/k/a KEVIN VAN WITT a/k/a
THE MONSTER LIBRARY,
AND THE MONSTER LIBRARY, LLC,

       Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
NO. 3:26-CV-00103-SFR

~~JANUARY 21~~APRIL __, 2026

**FIRST AMENDED COMPLAINT ~~FOR COPYRIGHT INFRINGEMENT AND INJUNCTIVE RELIEF~~**

Plaintiff Mini Studio, Inc. ("**Mini Studio**" or "**Plaintiff**"), by and through

undersigned counsel, alleges as follows:

**Nature of the Action**

1. This is an action for (1) breach of duty of loyalty, (2) breach of contract, (3)

trade secret misappropriation, (4) copyright infringement, and (5) unfair trade practices.

2. Plaintiff's claims arise from Defendant Kevin Wansa's ("Wansa") disloyalty

to Mini Studio during his employment, breach of his contractual obligations to Mini

Studio, misappropriation of Mini Studio's confidential and proprietary information and

trade secrets, unauthorized copying, use, and exploitation of Mini Studio's copyrighted

"PURP" character artwork, and unfair competition.

3. Defendant Wansa is a former employee of Mini Studio. His employment

was terminated when it was discovered that he was surreptitiously competing with Mini

Studio while employed by Mini Studio. Following his termination, he has systematically

used Mini Studio's confidential and proprietary information to copy Mini Studio's content,

and distribute it using the business name The Monster Library.

1. This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 et seq., arising from Defendants' unauthorized copying, use, and exploitation of Mini Studio's copyrighted character artwork from the FUZZLETS universe, including Mini Studio's character "PURP."

2. Defendants have created, published, and distributed audiovisual content that copies protectable expression embodied in Mini Studio's copyrighted character artwork and constitutes an unauthorized and infringing derivative work.

3. Defendants' infringing audiovisual work includes, without limitation, the YouTube video titled "Remi & The Lighthouse: The Storm That Changed Everything" available at the following URL: https://www.youtube.com/watch?v=-4H46BKw3ow (the "Infringing Video").

4. Mini Studio seeks injunctive relief to restrain Defendants' ongoing infringement, as well as damages, attorneys' fees, and such other relief as the Court deems just and proper.

## Parties

4. 5. Plaintiff Mini Studio, Inc. is a Delaware corporation with its principal place of business at One World Trade Center, 85th Floor, c/o Servcorp, New York, NY 10007.

5. 6. Defendant Kevin Wansa is an individual residing at 5 Short Street, Westport, CT 06880. Defendant Wansa has also held himself out publicly under the name "Kevin Van Witt." Defendant Wansa operated and/or was doing business as "The Monster Library," through which he published and/or monetized audiovisual content online.

2

7. Defendant The Monster Library is, upon information and belief, an unincorporated business, brand, and/or alter ego operated by Defendant Wansa and used to publish and monetize audiovisual content online, including on YouTube.

6. On or around September 27, 2024, Wansa organized The Monster Library LLC as a Connecticut limited liability company with a business address of 5 Short Street, Westport, CT 06880. Upon information and belief, The Monster Library LLC thereafter continued, ratified, and/or benefited from the business previously operated by Wansa under the name "The Monster Library."

7. Upon information and belief, the members of The Monster Library LLC are Wansa, and Mark Monroe, an individual who resides in South Carolina.

8. At all relevant times, Defendants acted individually and/or in concert and are responsible for the acts alleged herein, including pre-formation acts undertaken by Wansa doing business as "The Monster Library" and post-formation acts undertaken through The Monster Library LLC.

### Jurisdiction and Venue

9. This Court has exclusive subject matter jurisdiction over Plaintiff's copyright infringement claim pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act, 17 U.S.C. §§ 101 et seq.

10. This Court has subject matter jurisdiction over Plaintiff's claim of violation of the Defend Trade Secrets Act pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331.

11. In addition or in the alternative, this Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

12.    In addition or in the alternative, this Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13.    ~~10.~~ Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391 because Defendant Wansa resides in this District and may be found in this District.

14.    ~~11.~~ This Court has personal jurisdiction over Defendants because Defendant Wansa resides in Connecticut and engaged in the ~~infringing~~ conduct complained of herein from Connecticut, ~~including the publication and distribution of the Infringing Video~~ and because Defendant The Monster Library LLC is a Connecticut limited liability company.

### Mini Studio's Business

15.    Mini Studio is an animation studio that creates animated content for kids and families using human artistry and craftsmanship with the latest AI animation technologies.

16.    Mini Studio's employees write, design, and draw by hand various characters and stories, and then use AI to animate instead of using traditional 3D animation tools.

17.    Mini Studio has developed its own original animated content, including the Fuzzlets, a world of fuzzy creatures living in Joyville. Their stories are made to inspire joy, growth and values to kids and families around the world.

### Mini Studio Hires Wansa

18. On January 18, 2023, Mini Studio hired Wansa in the role of Marketing and Creative Director for Mini Studio pursuant to an "Employment Terms" letter agreement.

19. As a condition of his employment, Wansa also executed an "Employee Confidential Information and Inventions Assignment Agreement" (CIIAA). A copy of the CIIAA is attached to this Complaint as Exhibit 1.

20. Under Section 1.1 of the CIIAA, Wansa agreed:

My employment by Company creates a relationship of confidence and trust with respect to Confidential Information (as defined below) and Company has a protectable interest in the Confidential Information. At all times during and after my employment, I will hold in confidence and will not disclose, use, lecture upon, or publish any Confidential Information, except as required in connection with my work for Company, or as approved by an officer of Company. . . I will take all reasonable precautions to prevent the disclosure of Confidential Information. Company information or documentation to which I have access during my employment, regardless of whether it contains Confidential Information, is the property of Company and cannot be downloaded or retained for my personal use or for any use that is outside the scope of my duties for Company.

21. Under Section 1.4 of the CIIAA, Wansa agreed: "I will only use or disclose Confidential Information and Third Party Information as provided in this Section 1. The restrictions in this Section 1 are intended to and will continue indefinitely, even after my employment by Company ends. . . ."

22. Under the CIIAA, "Confidential Information" means "any and all confidential knowledge or data of Company" with limited exceptions not applicable to this case.

23. Under Section 2.4 of the CIIAA, Wansa did "hereby assign to Employer all my right, title, and interest in and to any and all Company Inventions . . . ."

24.    Section 2.1(d) defines "Company Inventions" as "any and all Inventions (and all Intellectual Property Rights related to Inventions) that are made, conceived, developed, prepared, produced, authored, edited, amended, reduced to practice, or learned or set out in any tangible medium of expression or otherwise created, in whole or in part, by me, either alone or with others, during my employment by Company, and all printed, physical, and electronic copies, and other tangible embodiments of Inventions."

25.    Section 2.1(a) defines "Intellectual Property Rights" as "all past, present and future rights of the following types, which may exist or be created under the laws of any jurisdiction in the world: trade secrets, Copyrights, trademark and trade name rights, mask work rights, patents and industrial property, and all proprietary rights in technology or works of authorship (including, in each case, any application for any such rights, all rights to priority, and any rights to apply for any such rights, as well as all rights to pursue remedies for infringement or violation of any such rights)."

26.    Section 2.1(b) defines "Copyright" as "the exclusive legal right to reproduce, perform, display, distribute and make derivative works of a work of authorship (for example, a literary, musical, or artistic work) recognized by the laws of any jurisdiction in the world."

27.    Under Section 2.7 of the CIIAA, Wansa agreed: "I acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of my employment and that are protectable by Copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101)."

28. Under Section 4 of the CIIAA, Wansa agreed: "I will not, without Company's written consent, directly or indirectly engage in any employment or business activity that is directly or indirectly competitive with, or would otherwise conflict with, my employment by Company."

29. Under Section 6 of the CIIAA, Wansa agreed:

for the one-year period after the date my employment ends for any reason, including voluntary termination by me or involuntary termination by Company (except as prohibited by law), I will not, directly or indirectly, as an officer, director, employee, consultant, owner, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services (defined above) anywhere in the Restricted Territory (defined below), nor will I assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the Restricted Territory.

30. Under Section 9 of the CIIAA, Wansa agreed:

When I cease to be employed by Company or upon Company's earlier request, I will deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information. I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including Confidential Information, I will provide Company with (a) a computer-useable copy of all such information and then permanently delete such information from those systems, and (b) access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed. Any property situated on Company's premises and owned by Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company's personnel at any time during my employment, with or without notice. Before leaving my employment with Company, I will (i) provide Company any and all information needed to access any Company property or information returned or required to be returned pursuant to this paragraph, including any login, password, and account information, (ii) cooperate with Company in attending an exit interview, and (iii) complete and sign Company's termination statement if required to do so by Company.

**Wansa Learns Mini Studio's Confidential and Proprietary Processes**

7

31.     While Wansa was employed at Mini Studio, Mini Studio developed specific, non-public creative and technical processes for generating, refining, and maintaining character consistency across its content, including internal prompt libraries, prompt structures, reference-image workflows, internal tool configurations, and post-generation refinement procedures that determined how Mini Studio's characters were designed, refined, and made visually consistent.

32.     These processes were not generic or publicly available instructions. Rather, they were detailed, experience-based creative and technical methods developed collaboratively by Mini Studio through substantial trial and error, used internally in Mini Studio's business, and shared only with personnel who required access in connection with their work for Mini Studio

33.     Wansa learned Mini Studio's confidential processes, and the specific tools and internal methods that Mini Studio used to implement its processes, solely through his role working with Mini Studio. Such information was not publicly available, was not documented publicly, and derived independent economic value from not being generally known to competitors.

34.     Using Mini Studio's processes, Wansa created various multimedia content for Mini Studio.

35.     In his role at Mini Studio, Wansa also had administrative control and access to Mini Studio's social media accounts, including the Mini Studio Instagram account (@ministudio.ai).

8

36. Mini Studio's content was posted to various online channels, including its own website, ministudio.ai, and social media sites (TikTok, Facebook, YouTube, X (f/k/a Twitter) and Instagram).

**Wansa's Misconduct During and After His Employment**

37. In December 2023, Mini Studio discovered that an unknown person or entity was posting similar types of content to Mini Studio in similar online channels under the name "The Monster Library."

38. In or around December 2023, Wansa began using the Mini Studio Instagram account (@ministudio.ai) to communicate via direct message with The Monster Library Instagram account (@The.Monster.Library).

39. On December 22, 2023, the operator of The Monster Library account wrote via direct message to the Mini Studio Instagram account: "Hey there" "How are you making the videos?"

40. Using the Mini Studio Instagram account, Wansa responded: "We have an internal tool we built. We'd love to get you on it at one point. In the mean time let's find a way to collaborate."

41. Wansa never told anyone at Mini Studio that he was communicating with the operator of The Monster Library Instagram account, or that he was proposing collaborating with the account operator.

42. Upon information and belief, shortly after these communications with The Monster Library Instagram account, Wansa acquired, assumed control over, or otherwise obtained operational control of The Monster Library Instagram account sometime in or around December 2023 to February 2024.

43.    Mini Studio discovered that in or around early February 2024, while Wansa was still employed by Mini Studio, Wansa had the ability to log into and access The Monster Library Instagram account and that such access existed in parallel with his administrative access to Mini Studio's own Instagram and Meta accounts.

44.    Specifically, within Meta's business tools, an account administrator can review the individuals who have access to an associated Instagram account, and can also see the other accounts that such individuals can access.

45.    Below is a screenshot from the Mini Studio Meta business tools page that demonstrates that Wansa simultaneously had access to the Mini Studio Instagram account and The Monster Library Instagram account.



46. Wansa never told anyone at Mini Studio that he had acquired The Monster Library Instagram account.

47. Following Wansa's acquisition of the The Monster Library Instagram account, The Monster Library Instagram account made posts that systematically copied the distinctive scenes, settings, characters, visual structures, and overall style of Mini Studio's content using methods and output characteristics consistent with the confidential processes Wansa had learned while employed at Mini Studio..

48. Depicted below are just a few examples demonstrating Wansa's systematic copying of Mini Studio content:

(Added)



**JANUARY 31, 2024**



**JANUARY 27, 2024**

(Added)



The Monster Library's Content

**FEBRUARY 20, 2024**



Mini Studio's Content

**FEBRUARY 16, 2024**

(Added)



The Monster Library's Content

**APRIL 12, 2024**



Mini Studio's Content

**JANUARY 29, 2024**



(Added)

Mini Studio's Content

The Monster Library's Content

**JANUARY 30, 2024**                                    **JUNE 10, 2024**

49.     On February 16, 2024, Mini Studio's outside counsel at Cooley LLP sent Wansa a written cease-and-desist letter (the "2024 Cease-and-Desist Letter"). The 2024 Cease-and-Desist Letter advised Wansa that Mini Studio had discovered he was unlawfully using and disclosing Mini Studio's confidential information and trade secrets for the benefit of a competing venture branded as "The Monster Library" while still employed by Mini Studio, in violation of his CIIAA and his duty of loyalty. The letter notified Wansa that his employment was being terminated for cause, demanded that he cease all work with The Monster Library and any other competitor, demanded the prompt return of all company equipment and confidential materials, and put him on notice that Mini Studio would pursue legal action, including injunctive relief, if he did not comply.

50.     Upon information belief, when Wansa learned of his termination, he deleted the direct messages between The Mini Studio Instagram account and The

Monster Library Instagram account from the Mini Studio Instagram account in an effort to conceal his improper, and disloyal actions.

51. Despite receiving the 2024 Cease-and-Desist Letter and being expressly instructed to cease all work with The Monster Library and to stop using Mini Studio's confidential information, Defendants continued to operate The Monster Library, and upon information and belief The Monster Library LLC later continued, ratified, and/or benefited from that same course of conduct.

52. After his termination, upon information and belief, Wansa falsely reported to Meta that various Mini Studio posts were in violation of Meta rules and guidelines, causing Mini Studio's Instagram account to be banned from posting for two days.

53. In June 2024, The Monster Library created a short video titled "Monster Camp." The "Monster Camp" video systematically copied Mini Studio's content, visual structure and style. The "Monster Camp" video was posted on several social media channels and had over 70 million views on X (f/k/a Twitter).

54. Five investors in Mini Studio flagged to Mini Studio the "Monster Camp" video indicating that they believed that the "Monster Camp" video was created by Mini Studio due to the striking similarities.

55. As a direct result of Wansa's activities and the continued operation of The Monster Library business, Mini Studio lost valuable opportunities to secure additional investment, business relationships, and licensing opportunities.

56. Wansa operated as "The Monster Library" through September 2024, when he then organized The Monster Library, LLC as a Connecticut limited liability company.

14

**Mini Studio's ~~Copyrighted~~Protected PURP Work**

57.    The main character of the Fuzzlets universe is PURP—a fuzzy purple character with a distinctive silhouette and proportions, facial feature configuration, fur and texture presentation, color treatment, and design and placement of the character's winter hat.

58.    PURP was conceived of by, and reduced to a tangible medium of expression by, Mini Studio employees through a series of hand-drawn images and related human model-sheet development.

59.    ~~12.~~ Mini Studio is the owner of copyright in the character artwork titled "PURP — Character Model Sheet" (the "**PURP Work**"), which depicts and embodies the protectable expression of the PURP character, including its distinctive silhouette and proportions, facial feature configuration, fur and texture presentation, color treatment, and the design and placement of the character's winter hat.

60.    ~~13.~~ The PURP Work is registered with the United States Copyright Office under Registration No. VAu001569706, with an effective date of registration of January 13, 2026. A copy of the registration is attached as Exhibit 2.

61.    ~~14.~~ Mini Studio is the author and owner of the PURP Work, which was created as a work made for hire by Mini Studio employees acting within the scope of their employment for Mini Studio.

62.    ~~15.~~ Mini Studio has continuously owned the rights in the PURP Work since its creation.

63.    Mini Studio has extensively distributed content online embodying the PURP Work.

15

**Defendants' Infringing Conduct**

64.    Defendants' infringing audiovisual work includes, without limitation, the YouTube video titled "Remi & The Lighthouse: The Storm That Changed Everything" available at the following URL: https://www.youtube.com/watch?v=-4H46BKw3ow (the "Infringing Video").

65.    ~~16.~~ Defendants created, published, distributed, and publicly displayed the Infringing Video, which contains a character and related expressive elements that are substantially similar to, and unlawfully derived from, Mini Studio's copyrighted PURP Work.

66.    ~~17.~~ The infringement is not limited to general ideas such as "cute creatures," "children's stories," "forest settings," or "wellness themes." Rather, Defendants' character reproduces protected, concrete expressive choices embodied in Mini Studio's copyrighted character artwork, including the specific combination of the character's proportions and silhouette, facial configuration, color treatment, fur and texture presentation, and the winter hat design and placement.

67.    ~~18.~~ The PURP character and Mini Studio's FUZZLETS universe were developed and publicly disseminated by Mini Studio prior to Defendants' publication of the Infringing Video.

~~19. Upon information and belief, Defendant Wansa was employed by Mini Studio as a full-time employee beginning in or around January 2023, during which time he signed an Employee Confidential Information and Inventions Assignment Agreement and an equity plan agreement that imposed confidentiality, non-competition, and intellectual property assignment obligations in favor of Mini Studio. In that role, he had access to Mini Studio's FUZZLETS character design materials, internal development~~

16

files, and workflow resources, including materials relating to PURP, and he used Mini Studio equipment and accounts in connection with those duties.

## CLAIMS FOR RELIEF

### COUNT I —Breach of Duty of Loyalty against Wansa

68. Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 as if fully set forth herein.

69. While employed at Mini Studio, Wansa owed Mini Studio a duty of loyalty, including but not limited to duties to act in Mini Studio's best interests, to deal with third parties in the interests of Mini Studio and not himself, to not usurp opportunities of Mini Studio, to not use or disclose confidential information other than for the benefit of Mini Studio, and to not compete with Mini Studio.

70. Wansa breached his duties to Mini Studio in numerous ways, including but not limited to:

a. Failing to act in the best interests of Mini Studio at all times;

b. Surreptitiously communicating with the operator of The Monster Library Instagram account;

c. Failing to notify Mini Studio about the opportunity to acquire The Monster Library Instagram account;

d. Acquiring The Monster Library Instagram account;

e. Using or disclosing Mini Studio's confidential and proprietary information other than for the benefit of Mini Studio, including by creating content that was similar and competitive with Mini Studio content; and/or

f. Competing with Mini Studio as The Monster Library.

17

71.    Mini Studio has been damaged by Wansa's breaches of his duty loyalty in an amount to be proven at trial.

72.    Wansa's actions were knowing, deliberate, and intentional violations of his duties to Mini Studio, and Wansa should be required to disgorge and/or forfeit all the benefits he received as a result of, and during the period of, his disloyal activities, including but not limited being required to disgorge The Monster Library Instagram account, The Monster Library brand, all content he created using Mini Studio's information, disgorgement of any salary and compensation he was paid, and any other profits, revenues, business opportunities, and other benefits derived from The Monster Library account, The Monster Library business, and content created, distributed, or monetized through the misuse of Mini Studio's confidential information .

73.    In addition, Mini Studio has been irreparably harmed by Wansa's actions, including by the impairment of Mini Studio's goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

74.    Therefore, Wansa should be preliminarily and/or permanently enjoined from using The Monster Library brand, using The Monster Library Instagram account, and/or creating and posting any multimedia content derived from Mini Studio's Confidential Information.

## COUNT II —BREACH OF CONTRACT

75.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 72 as if fully set forth herein.

76.    Wansa and Mini Studio entered into the CIIAA.

77.    Mini Studio performed all material obligations required of it under the CIIAA, and, to the extent the Employment Terms letter agreement is relevant to the

18

claims asserted herein, Mini Studio performed all material obligations required of it thereunder.

78. Wansa has breached his obligations to Mini Studio, including but not limited to by:

a. Breaching Section 1 of the CIIAA by disclosing and using Confidential Information other than in connection with his work for Mini Studio, and by retaining Mini Studio's information for uses that were outside the scope of his duties for Mini Studio.

b. Breaching Section 4 of the CIIAA by, without Mini Studio's written consent, engaging in employment and/or business activities that are or were competitive with, and conflicted with, his employment by Mini Studio.

c. Breaching Section 6 of the CIIAA by directly or indirectly performing, providing, assisting with, and/or continuing Conflicting Services through "The Monster Library" and The Monster Library LLC within the one-year period after the date his employment with Mini Studio ended.

d. Breach of Section 9 of the CIIAA by failing to deliver to Mini Studio all of its information upon his termination, and for deleting information without delivering a copy to Mini Studio, including the direct messages in the Mini Studio Instagram account.

79. Mini Studio has been damaged by Wansa's breaches of the CIIAA.

80. ~~20. Defendants' conduct has~~In addition, Wansa's breaches have caused and ~~continues~~continue to cause Mini Studio to suffer irreparable harm, including ~~harm to~~

19

Mini Studio's, but not limited to, the impairment of its goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

### Pre-Suit Notice and Misconduct

21. On February 16, 2024, Mini Studio's outside counsel at Cooley LLP sent Defendant Wansa a written cease-and-desist letter (the "2024 Cease-and-Desist Letter"). The 2024 Cease-and-Desist Letter advised Wansa that Mini Studio had discovered he was unlawfully using and disclosing Mini Studio's confidential information and trade secrets for the benefit of a competing venture branded as "The Monster Library" while still employed by Mini Studio, in violation of his Employee Confidential Information and Inventions Assignment Agreement and his duty of loyalty. The letter notified Wansa that his employment was being terminated for cause, demanded that he cease all work with Monster Library and any other competitor, demanded the prompt return of all company equipment and confidential materials, and put him on notice that Mini Studio would pursue legal action, including injunctive relief, if he did not comply.

22. Despite receiving the 2024 Cease-and-Desist Letter and being expressly instructed to cease all work with Monster Library and to stop using Mini Studio's confidential information, Defendants continued to operate The Monster Library and to exploit a character that is substantially similar to Mini Studio's PURP character, including by publishing and maintaining the Infringing Video. Defendants' infringement is therefore knowing and willful.

### YouTube DMCA Takedown and Counter-Notification

81. Pursuant to Section 10.2 of the CIIAA, Mini Studio is entitled, to the extent it is successful in whole or in part, to recover from Wansa the costs, fees, and expenses incurred in enforcing the CIIAA, including reasonable attorneys' fees.

## COUNT III — VIOLATION OF DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) AGAINST WANSA AND THE MONSTER LIBRARY LLC

82. Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 as if fully set forth herein.

83. Mini Studio owns valuable trade secret information, including specific, non-public prompts, creative structures, and workflows that determine how its characters are designed, refined, and made visually consistent.

84. These prompts are not generic instructions but instead are detailed, experience-based creative processes developed collaboratively through internal experimentation, iterative testing, and substantial trial and error, and they are used by Mini Studio to create commercially valuable and distinctive content.

85. Mini Studio's uses its trade secret information in interstate commerce.

86. The specific, non-public prompts, creative structures, and workflows are not generally known or readily ascertainable by others, and are extremely valuable to Mini Studio.

87. Mini Studio took reasonable measures to keep the information secret, including by requiring its employees to enter into contracts, like the CIIAA, that require employees not to disclose Mini Studio's Confidential Information.

88. Wansa and The Monster Library LLC misappropriated Mini Studio's trade secret information because Wansa has retained, used, and disclosed the information in breach of his obligations to Mini Studio, including by using such information to create competing content and operate a competing business. Upon information and belief, The Monster Library LLC continued, ratified, and/or benefited from the use of such

21

misappropriated information after its formation and Wansa is a member of The Monster Library LLC and in control of The Monster Library LLC.

89.     Mini Studio has been, and is continuing to be harmed by Defendants misappropriation of its trade secrets.

90.     In addition, Wansa's breaches have caused Mini Studio to suffer irreparable harm, including but not limited to, the impairment of its goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

## Count IV—VIOLATION OF CONNECTICUT UNIFORM TRADE SECRETS ACT (CONN. GEN. STAT. §§ 35-50 – 35-58) AGAINST WANSA AND THE MONSTER LIBRARY LLC

91.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 as if fully set forth herein.

92.     Mini Studio owns valuable trade secret information, including specific, non-public prompts, creative structures, and workflows that determine how its characters are designed, refined, and made visually consistent.

93.     These prompts are not generic instructions but instead are detailed, experience-based creative processes developed collaboratively through trial and error and shared internally as part of Mini Studio's work.

94.     The specific, non-public prompts, creative structures, and workflows are not generally known or readily ascertainable by others, and are extremely valuable to Mini Studio.

95.     Mini Studio took reasonable measures to keep the information secret, including by requiring its employees to enter into contracts, like the CIIAA, that require employees not to disclose Mini Studio's Confidential Information.

96.    Wansa and The Monster Library LLC misappropriated Mini Studio's trade secret information because Wansa has retained, used, and disclosed the information in breach of his obligations to Mini Studio, and Wansa is a member of The Monster Library LLC and in control of The Monster Library LLC.

97.    Mini Studio has been, and is continuing to be harmed by Defendants misappropriation of its trade secrets.

98.    In addition, Wansa's breaches have caused Mini Studio to suffer irreparable harm, including but not limited to, the impairment of its goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

## COUNT V — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) AGAINST WANSA AND THE MONSTER LIBRARY LLC

99.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 as if fully set forth herein.

100.    Defendants, without authorization, copied protected expression embodied in the PURP Work and created and distributed an infringing and/or derivative audiovisual work, including the Infringing Video located at https://www.youtube.com/watch?v=-4H46BKw3ow.

101.    Exhibit 3 to this Complaint is a document demonstrating the substantial similarity between the Infringing Video and the protected expression embodied in the registered PURP Work. To the extent Exhibit 3 includes additional Mini Studio media, such media is offered solely as illustrative evidence of the same protected PURP character expression embodied in the registered PURP Work.

23

102. 23. On or about January 2, 2026, Mini Studio submitted a copyright takedown notice to YouTube under 17 U.S.C. § 512 regarding the Infringing Video. In response, YouTube removed or disabled access to the Infringing Video.

103. 24. On January 9, 2026, YouTube notified Mini Studio that Defendant Wansa had submitted a counter-notification under 17 U.S.C. § 512(g) contesting the takedown. In that counter-notification, Wansa asserted under penalty of perjury that the removal of the Infringing Video was the result of a mistake or misidentification, claimed that he independently created the video and that it does not copy any copyrighted work owned by Mini Studio, and consented to the jurisdiction of this Court. YouTube's notice stated that, absent evidence of a filed lawsuit seeking to restrain the alleged infringement, YouTube may reinstate the Infringing Video after ten (10) business days.

104. 25. This action is filed within that statutory window and seeks, among other relief, an order restraining Defendants' continued infringement, including distribution of the Infringing Video at https://www.youtube.com/watch?v=-4H46BKw3ow.

Irreparable Harm and Need for Injunction

105. 26. Defendants' infringement is ongoing and threatens continued harm to Mini Studio's exclusive rights, including rights to prepare derivative works and to control the marketplace for the PURP character and the FUZZLETS universe.

106. 27. Mini Studio lacks an adequate remedy at law because unauthorized online distribution causes immediate and difficult-to-quantify harms, including loss of control, dilution of distinctiveness, and impairment of licensing value.

28. Unless restrained by this Court, Defendants will continue to infringe Mini Studio's copyrighted work.

24

## ~~CLAIM FOR RELIEF~~

### ~~COUNT I — COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)~~

~~29. Plaintiff repeats and realleges the allegations in paragraphs 1 through 28 as if fully set forth herein.~~

~~30. Mini Studio owns valid copyrights in the PURP Work, including Registration No. VAu001569706.~~

~~31. Defendants, without authorization, copied protected expression embodied in the PURP Work and created and distributed an infringing and/or derivative audiovisual work, including the Infringing Video located at https://www.youtube.com/watch?v=4H46BKw3ow.~~

107. ~~32.~~ Defendants have infringed Mini Studio's copyrights in violation of 17 U.S.C. § 501, including Mini Studio's exclusive rights under 17 U.S.C. § 106.

108. ~~33.~~ As a result of Defendants' infringement, Mini Studio has suffered and will continue to suffer damages in an amount to be proven at trial.

109. ~~34.~~ Defendants' infringement was willful, intentional, and undertaken with knowledge of Mini Studio's rights~~, including after receipt of the 2024 Cease-and-Desist Letter described above~~.

110. Unless restrained by this Court, Defendants will continue to infringe Mini Studio's copyrighted work.

### COUNT VI — VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT (CONN. GEN. STAT. § 42-110b) AGAINST WANSA AND THE MONSTER LIBRARY LLC

111. Plaintiff repeats and realleges the allegations in paragraphs 1 through 65 as if fully set forth herein.

112. Defendants engaged in unfair acts which resulted in an ascertainable loss of money or property in the conduct of trade or commerce.

113. Defendants' actions are unfair trade practices that (1) offend public policy as evidenced by statutes, common law, or other established fairness concepts; (2) are immoral or unethical; and (3) cause substantial injury to consumers, competitors or other business people.

114. Mini Studio has been damaged by Defendants' unfair trade practices in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Mini Studio respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. Awarding money damages in Mini Studio's favor on each Count set forth in this Complaint;

B. Ordering disgorgement of all benefits Defendants received;

C. Ordering forfeiture of Wansa's compensation and any other benefits he received;

D. Awarding damages for unjust enrichment for trade secret misappropriation;

E. Awarding a reasonable royalty for trade secret misappropriation;

F. An order requiring Defendants to transfer to Mini Studio any social-media accounts, account access, business assets, or brand assets acquired, developed, controlled, or operated through Wansa's breach of duty, breach of contract, or misuse of Mini Studio's Confidential Information or trade secrets;

G. Awarding Mini Studio double, treble, and/or punitive damages as permitted by applicable law, including, but not limited to, the DTSA, CUTSA, and/or CUTPA.

H. Awarding Mini Studio its attorneys' fees pursuant to the CIIAA, the DTSA, CUTSA, CUTPA, and/or the Copyright Act.

I. ~~A.~~ Declaring that Defendants have infringed Mini Studio's copyrights in the PURP Work;

J. ~~B.~~ Entering preliminary and permanent injunctive relief ~~restraining Defendants, and all those acting in concert with them,~~ including the following:

a. An order requiring Defendants to identify all Mini Studio Confidential Information and/or trade secrets in their possession;

b. An order requiring Defendants to identify all persons or entities to whom they transmitted any Mini Studio Confidential Information and/or trade secrets;

c. An order restraining Defendants from retaining, using, or disclosing Mini Studio's Confidential Information or trade secrets;

d. An order enjoining Wansa from, for a period of one-year, directly or indirectly, as an officer, director, employee, consultant, owner, partner, or in any other capacity soliciting, performing, or providing, or attempting to perform or provide Conflicting Services (as defined in the CIIAA) anywhere in the Restricted Territory (as defined in the CIIAA), or assisting another person to solicit, perform or provide or attempt to

27

perform or provide Conflicting Services anywhere in the Restricted Territory.

e. An order requiring Wansa to identify all computers, devices, and/or accounts he used to conduct business as The Monster Library, and to submit to forensic examination of those computers, devices, and/or accounts;

f. An order requiring Defendants to transfer The Monster Library brand to Mini Studio;

g. An order requiring the Defendants to cease all further use of The Monster Library brand;

h. An order requiring the Defendants to turn over access to all social media accounts used by Wansa and/or The Monster Library LLC that have been used to compete with Mini Studio to Mini Studio;

i. An order enjoining Defendants from copying, distributing, displaying, exploiting, or creating derivative works based on the PURP Work and the PURP character expression embodied therein, including continued distribution of the Infringing Video at https://www.youtube.com/watch?v=-4H46BKw3ow https://www.youtube.com/watch?v=-4H46BKw3ow;

j. C. Ordering An order ordering Defendants to remove, disable access to, and/or cease distribution of infringing materials within their control;

DK.  Awarding Mini Studio damages pursuant to 17 U.S.C. §§ 504 and 505, including statutory damages to the extent available, and attorneys' fees and costs; and

E~~L~~.    Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all issues triable as such.

PLAINTIFF – MINI STUDIO, INC.

*/s/ Damian K. Gunningsmith*
~~By:~~ _____
    ~~Andy I. Corea – ct25925~~
    ~~acorea@harrisbeachmurtha.com~~
Damian K. Gunningsmith
~~HARRIS BEACH MURTHA CULLINA PLLC~~
Federal Bar No. ct29430
CARMODY TORRANCE SANDAK &
HENNESSEY LLP
~~265~~195 Church Street~~, 9th Floor~~
P.O. Box 1950
New Haven, CT ~~06510~~06509-1950
Phone: (203) 777-5501
Fax: (203) 784-3199
dgunningsmith@carmodylaw.com
~~Telephone: 203.772.7700~~
~~Facsimile: 203.772.7723~~
~~Its Attorneys~~

| Summary report: Litera Compare for Word 11.15.0.58 Document comparison done on 4/15/2026 1:51:32 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Complaint for Mini Studio, Inc. (4899-7270-5162 1).docx | |
| **Modified filename:** Mini-Wansa-First Amended Complaint-Clean (1).docx | |
| **Changes:** | |
| Add | 319 |
| Delete | 85 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 5 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 409 |