## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| MINI STUDIO, INC., | CASE NO. 3:26-cv-00103-SFR |
| Plaintiff/Counter Defendant, | |
| v. | |
| KEVIN WANSA, ET AL. | |
| Defendants/Counter Claimants, | |
| v. | |
| YOUMNA CHAMCHAM, | |
| Counter Defendant. | May 6, 2026 |

## MEMORANDUM OF LAW IN OPPOSITION TO COUNTER CLAIMANTS' APPLICATION FOR PREJUDGMENT REMEDY AND IN SUPPORT OF PLAINTIFF'S CROSS-APPLICATION FOR PREJUDGMENT REMEDY

Plaintiff/Counter Defendant Mini Studio, Inc. ("Mini Studio") and Counter Defendant Youmna Chamcham ("Chamcham") submit this memorandum of law in opposition to Defendants/Counter Claimants' Application for Prejudgment Remedy (ECF No. 23) and Supplemental Motion for Prejudgment Remedy (ECF No. 30), and in support of Mini Studio's Cross-Application for Prejudgment Remedy (contingent in part on the Court's granting of Mini Studio's pending Motion for Leave to Amend (ECF No. 37)).

The Court should deny Counter Claimants' Application because they cannot establish probable cause that a judgment will be rendered in their favor on any of their counterclaims. The Counter Claimants cannot establish probable cause that they are likely to prevail on their defamation, and derivative tortious interference and CUTPA claims for numerous reasons, including, among others: (1) many of the Counter Claimants' allegations are false, and any

statements Mini Studio or Chamcham actually made to third parties were true or substantially true; (2) the allegedly defamatory statements are not actionable as a matter of law because they are opinions as opposed to facts; and (3) Mini Studio and Chamcham's allegedly defamatory statements were made in good faith and are privileged and non-actionable. Likewise, the Counter Claimants cannot establish probable cause to support their unpaid overtime wage claim because (1) the evidence will show that Counter Claimant Kevin Wansa ("Wansa") was a salaried employee that was exempt from Connecticut overtime laws, and (2) Wansa has grossly inflated his alleged working hours even if he were not exempt from Connecticut overtime laws. Finally, with respect to Wansa's failure-to-issue-vested-equity claim, the evidence will show Wansa: (1) was never offered an option to purchase equity; (2) was never granted an option to purchase equity; (3) never exercised any option to purchase equity; and (4) even if had been granted any equity incentive compensation, he forfeited any right to it upon his termination for cause.

Additionally, Counter Claimants' Application should be denied because they cannot establish the amount of their requested attachments with reasonable certainty. Their alleged damages for defamation, tortious interference, and violation of CUTPA, rely on speculative opportunities that they will not be able to show they would have received but for any of the alleged actions of Mini Studio and Chamcham. Further, Counter Claimants' request that Mini Studio transfer shares of stock into Connecticut is legally defective because it is not a form of relief that the Court can grant. Mini Studio's stock is not property belonging to Mini Studio that can be attached. Moreover, the Counter Claimants cannot establish irreparable harm necessary to grant this form of relief even if it were lawful.

Mini Studio's Cross-Application should be granted because the evidence will establish probable cause that Mini Studio is likely to prevail on all its claims. Wansa breached his duty of

2

loyalty to Mini Studio and violated the Employee Confidential Information and Inventions Assignment Agreement ("CIIAA") by assuming control over competing venture The Monster Library while still employed by Mini Studio, and by utilizing Mini Studio's confidential information and trade secrets for the benefit of The Monster Library. The evidence will show that Counter Claimants, among other things: (1) misappropriated Mini Studio's trade secrets to create competing content and operate a competing business while still employed by Mini Studio; (2) copied the protectable expressions in Mini Studio's registered PURP work; and (3) engaged in a systematic copying of Mini Studio's content. Based on Counter Claimants' illegal and unethical actions, there is probable cause to believe that a judgment of up to $10,000,000 will be rendered in Mini Studio's favor.

**FACTUAL AND PROCEDURAL BACKGROUND**

Counter Claimant Kevin Wansa ("Wansa") is a former employee of Plaintiff Mini Studio, working as its Marketing and Creative Director from January 2023 until February 2024 when he was terminated for cause. Mini Studio is an animation studio that creates animated content using human artistry and craftsmanship with the latest artificial intelligence animation technologies. Mini Studio's employees write, design, and draw by hand various characters and stories and then use artificial intelligence software to animate these characters. Mini Studio has created, among other things, specific, non-public creative and technical processes for use across its content, including the Fuzzlets, a world of fuzzy creatures living in Joyville. Mini Studio also owns a copyright in the artwork of its star character PURP, a fuzzy purple character with distinctive features.

As a condition of his employment at Mini Studio, Wansa executed an Offer Letter and an Employee Confidential Information and Inventions Assignment Agreement ("CIIAA") that, among other things, prohibited him from either disclosing Mini Studio's confidential processes

3

or competing with Mini Studio. As Mini Studio's Marketing and Creative Director, Wansa learned of, and helped develop, Mini Studio's confidential processes, and the specific tools and internal methods that Mini Studio used to implement its processes. While employed by Mini Studio, Wansa used these processes to, among other things, generate content for Mini Studio. Additionally, while employed by Mini Studio, Wansa had administrative control and access to Mini Studio's social media accounts.

In February 2024, Wansa was terminated for cause when Mini Studio discovered that Wansa was unlawfully using and disclosing Mini Studio's confidential information and trade secrets for the benefit of The Monster Library, a competing venture that Wansa had assumed control over sometime between December 2023 and February 2024 while he was still an employee of Mini Studio. Wansa operated as The Monster Library through September 2024 when he then organized The Monster Library, LLC.

Between December 2023 and the present, Wansa and The Monster Library have engaged in a systematic copying of Mini Studio's content using Mini Studio's proprietary internal workflows and trade secrets, including with their June 2024 video "Monster Camp," which obtained over 70 million views on X (f/k/a Twitter). Wansa and The Monster Library have also extensively distributed content that reproduces the protected, concrete expressive choices embodied in Mini Studio's copyrighted PURP work; this content includes the YouTube video "Remi & The Lighthouse: The Storm That Changed Everything." Wansa has continued to operate The Monster Library despite receiving a February 16, 2024, cease-and-desist letter from Mini Studio's outside counsel. Counter Claimants' improper actions have, among other things, usurped Mini Studio's opportunities and harmed Mini Studio's goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

4

Mini Studio's Amended Complaint (ECF No. 37[1]) asserts claims of (1) breach of duty of loyalty; (2) breach of contract; (3) trade secret misappropriation; (4) copyright infringement, and (5) unfair trade practices. Counter Claimants' Counterclaim (ECF No. 14) asserts claims of (1) defamation; (2) tortious interference with business expectancies; (3) CUTPA; (4) wage theft; and (5) failure to issue vested equity. On February 11, 2026, Counter Claimants filed their Application for Prejudgment Remedy (ECF No. 23). On May 6, 2025, Plaintiff filed its Cross-Application for Prejudgment Remedy.

## LEGAL STANDARD

"Generally speaking, a prejudgment remedy is intended to secure the satisfaction of a judgment should the plaintiff prevail." *Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (internal citation and quotation marks omitted). "Although the federal civil rules govern the conduct of an action in federal court, state law determines when and how a provisional remedy is obtained." *SS & C Techs., Inc. v. Providence Inv. Mgmt.*, 582 F. Supp. 2d 255, 257 (D. Conn. 2008).

> Under Connecticut law, a prejudgment remedy is appropriate if the court, "upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted." Conn. Gen. Stat. § 52-278d(a).

*FloodBreak, LLC v. Art Metal Indus., LLC*, 520 F. Supp. 3d 167, 173 (D. Conn. 2021).

> Probable cause requires less proof than that which is required for a fair preponderance of the evidence. [P]robable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would

---

[1] The Court has not yet granted Mini Studio's Motion for Leave to Amend its Complaint. Therefore, only Mini Studio's copyright infringement claim in its original Complaint is currently pending. Mini Studio's Cross-Application for Prejudgment Remedy is therefore contingent in part on the Court's granting of that Motion insofar as it seeks a prejudgment remedy on Mini Studio's additional claims set forth in its proposed First Amended Complaint.

warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. Probable cause is a flexible common sense standard that does not demand that a belief be correct or more likely true than false. In assessing a motion for a prejudgment remedy, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits.

*Pizziconi v. Gray*, No. 3:23-CV-01080 (KAD), 2025 WL 2432673, at *5 (D. Conn. Aug. 22, 2025) (internal citations and quotation marks omitted).

## ARGUMENT

I.  **The Court should deny Counter Claimants' Application for a Prejudgment Remedy because they cannot establish probable cause that a judgment will be rendered in their favor on any of their claims.**

A.  **The Counter Claimants cannot establish probable cause that they will prevail on their defamation, tortious interference, and CUTPA claims.**

Counter Claimants' defamation, and derivative tortious interference, and CUTPA claims all are based on allegations that Mini Studio and Chamcham improperly accused Wansa and The Monster Library of copying Mini Studio's content. *See, e.g.,* Counterclaim, ¶¶ 48, 52, 56, ECF No. 14. Specifically, Counter Claimants allege that Mini Studio and Chamcham improperly communicated accusations of infringement and copying to: (1) Caroline Ingeborne of LumaAI; (2) the Chroma award committee; (3) Aaron Sisto of Chronicle Studios; (4) investors from the A16Z Speedrun program; and (5) DCM Ventures. *See* Counterclaim (ECF No. 14), ¶¶ 22-43. Counter Claimants cannot establish probable cause that they will prevail on these claims for several reasons.

First, the evidence will show that Wansa's verified allegations contain numerous falsities. *See* Answer to Counterclaims, ECF No. 33. Thus, Wansa will not be able to prove many of the allegations supporting his purported claims. To the contrary, and to the extent the alleged statements were actually made, the evidence will show that Mini Studio's and Chamcham's allegedly defamatory statements were entirely or substantially true. Wansa, while he was still an

6

employee of Mini Studio between December 2023 and February 2024, unlawfully used and disclosed Mini Studio's confidential information and trade secrets for the benefit of The Monster Library. Moreover, Wansa and The Monster Library have engaged in a systematic copying of Mini Studio's content and infringed on Mini Studio's copyright PURP work. These actions were, among other things, in direct violation of Wansa's duty of loyalty to Mini Studio and in violation of Sections 1, 4, 6, and 9 of his CIIAA.

Second, regardless of their truth, the allegedly defamatory statements are not even actionable. "To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020). "[A]lthough an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated...." *Id.* at 412. The evidence will show that Mini Studio and Chamcham were merely expressing their opinion based on the underlying facts that Wansa and The Monster Library were copying Mini Studio's content and infringing Mini Studio's copyrighted work.

Third, regardless of their truth, Mini Studio and Chamcham's allegedly defamatory statements are entitled to protection under a qualified privilege and/or litigation privilege. *See Khan v. Yale Univ.*, 347 Conn. 1, 50 (2023) ("qualified privilege protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication") (internal quotation marks and citations omitted); *Benchmark Mun. Tax Servs., Ltd. v. Greenwood Manor, LLC*, 194 Conn. App. 432, 440 (2019) (tortious interference requires "at least some improper motive or improper means"); *Bouazza v. Geico Gen. Ins. Co.*, 230 Conn. App. 297, 302 (2025) ("The litigation privilege is a

long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy"). Mini Studio and Chamcham made their statements in good faith, and were entitled to pursue their remedies under the DMCA and otherwise.

Finally, insofar as the Counter Claimants' CUTPA claim is also premised on allegations that Mini Studio's copyright infringement lawsuit is anti-competitive, the claim is barred by the *Noerr-Pennington* doctrine. *See, e.g., Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 644 & n.3 (M.D. Pa. 2017) (concluding that *Noerr-Pennington* doctrine applies to state law claims premised on alleged fraudulent assertion of copyright infringement claim). The Counter Claimants cannot possibly establish both that this lawsuit was objectively baseless when brought, and was subjectively brought to interfere with the business relationships of a competitor. *Id.*

## B. The Counter Claimants cannot establish probable cause that they will prevail on their unpaid overtime wages claim.

Counter Claimants' wage claim asserts that Mini Studio failed to pay Wansa overtime wages. Counter Claimants cannot present facts sufficient to show probable cause that a judgment will be rendered in their favor on this claim for several reasons.

First, Counter Claimants cannot establish probable cause that Wansa, Mini Studio's Marketing and Creative Director, was protected by Connecticut's overtime statutes. Connecticut's overtime statutes except from the definition of "employee" those "employed in a bona fide executive, administrative or professional capacity." Conn. Gen. Stat. § 31-58(e); *see* Conn. Agencies Regs. § 31-60-14(a) (defining executive capacity); Conn. Agencies Regs. § 31-60-15(a) (defining administrative capacity); Conn. Agencies Regs. § 31-60-16(a) (defining professional capacity). The evidence will show that Wansa was within one or more of these exceptions, and correspondingly that he was not entitled to overtime wages. For example, and

not by way of limitation, as Mini Studio's Marketing and Creative Director, Wansa performed work that was original and creative in character in a recognized field of artistic endeavor. *See* Conn. Agencies Regs. § 31-60-16(a)(1)(B). Indeed, Wansa's January 18, 2023 offer letter specifically stated that "[a]s a full-time exempt salaried employee . . . [he] will not be eligible for overtime compensation."

Second, even were Wansa an employee for purposes of Connecticut's overtime statutes (which he is not), Wansa has not and cannot present evidence that Mini Studio violated these statutes. Contrary to Counter Claimants' assertions, the evidence will show that Wansa was not "working at least 80 hours per week" continuously from summer of 2023 through fall of 2023 as fancifully claims. *See* Counterclaim (ECF No. 14), ¶ 93.

Third, the evidence will show that Mini Studio is likely to prevail on its breach of duty of loyalty claim and affirmative defense. As a result, the evidence will show that it would be equitable to require Wansa to forfeit his compensation for his egregious disloyalty to Mini Studio. *See Wall Systems, Inc.*, 324 Conn. at 738 ("the court may conclude that all compensation should be forfeited because the "employee's unusually egregious or reprehensible conduct pervaded and corrupted the entire [employment] relationship." (citation omitted).

### C. The Counter Claimants' cannot establish probable cause that they will prevail on their failure-to-issue-vested-equity claim.

Counter Claimants claim that Mini Studio failed to issue Wansa vested shares of Mini Studio. Although vaguely pled, this claim is necessarily one for breach of contract. "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Counter Claimants, however, have

not pled and cannot present facts sufficient to show probable cause that a judgment will be rendered in their favor on this claim for at least three reasons.

First, the Counter Claimants cannot establish the formation of an agreement. Wansa's January 18, 2023, offer provided: "Subject to approval by the Company's Board of Directors (the "Board"), the Company *anticipates* granting you an option to purchase 90,000 shares of the Company's common stock at the fair market value as determined by the Board." (emphasis added). This was not a clear and definite promise to grant Wansa an option to purchase equity. It was a mere representation of future intent giving rise to no possible contractual liability. *See Geary v. Wentworth Lab'ys, Inc.*, 60 Conn. App. 622, 628 (2000) ("Mere representations indicating an intent to enter into a future contract for employment do not give rise to contractual liability."). Therefore, Wansa cannot prevail on this claim as a matter of law.

Second, even were Wansa offered an option (which he was not), the option was expressly subject to approval by Mini Studio's Board of Directors. This condition never occurred. Indeed, Counter Claimants acknowledged that Wansa "never received . . . a formal option grant notice; [or] a board approval document." Counterclaim (ECF No. 14), ¶ 104.

Third, even if Mini Studio had offered Wansa an option to purchase equity, and even if Mini Studio's Board had approved Wansa for an option to purchase equity, the evidence will show that Wansa never exercised that option. Indeed, Wansa's offer letter did not contemplate an unrestricted grant of shares. Instead, it contemplated a potential option to "purchase" shares at "the fair market value as determined by the Board." Wansa never made any such purchase of shares.

Fourth, even if Wansa had an enforceable option to purchase equity, he forfeited this option upon his termination for cause. Under the terms of the Mini Studio's 2022 Equity Incentive Plan, Section 5(k):

> [I]f a Participant's Continuous Service is terminated for Cause, the Option or [Stock Appreciation Right] will terminate immediately upon such Participant's termination of Continuous Service, and the Participant will be prohibited from exercising his or her Option or [Stock Appreciation Right] (whether vested or unvested) from and after the date of such termination. . .

Finally, as mentioned above, even if he were entitled to a grant of equity, the evidence will show that Wansa should forfeit his compensation due to his egregious and reprehensible disloyalty to Mini Studio.

### D.     The Counter Claimants cannot establish probable cause as to the amount of their requested attachment.

Even if Counter Claimants were able to establish probable cause as to the validity of any of their claims, which they cannot, their Application for Prejudgment Remedy should be denied because they cannot establish probable cause for the amount of their requested attachment.

> [T]o justify issuance of a prejudgment remedy, probable cause must be established **both** as to the merits of the cause of action and as to the amount of the requested attachment. That dual requirement ensures that a person is not deprived of the use of property without due process of law. . . . Therefore, the party seeking the prejudgment remedy must present evidence that is sufficient to enable the court to determine the probable amount of the damages involved. . . . Although the likely amount of damages need not be determined with mathematical precision . . . the plaintiff bears the burden of presenting evidence [that] affords a reasonable basis for measuring her loss. . . .

*Kosiorek v. Smigelski*, 112 Conn. App. 315, 323 (2009) (internal citations omitted; emphasis in original).

Counter Claimants cannot provide a reasonable basis for the Court to conclude that the probable amount of damages involved is $1,000,000. The only facts that Counter Claimants have asserted in support of their damages are: (1) an alleged impact on Counter Claimants' business

11

relationship with Luma AI, which had allegedly generated $12,000 in revenue; (2) a missed opportunity to receive a $3,000 cash prize from the Chroma Award; (3) a missed opportunity for a $100,000 deal with Chronicle Studios; (4) a missed opportunity for a $1,000,000 investment package from DMC Ventures; and (5) a claim for $250 to $950 per week in wages for a period of 30 weeks. Counter Claimants, however, cannot show sufficient facts to establish probable cause for any of these damages.

> It is axiomatic that the burden of proving damages is on the party claiming them.... When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty.... Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty.

*Reyes v. Chetta*, 143 Conn. App. 758, 767, 71 A.3d 1255, 1261 (2013)

Counter Claimants acknowledge that they were merely "in the running" for opportunities with Luma AI, Chroma, Chronicle Studio, and DMC Ventures. Counterclaim (ECF No. 14), ¶¶ 14-18. Merely being in the running for an award or deal, however, is insufficient to establish with reasonable certainty that Counter Claimants would have received each award but for Mini Studio's and Chamcham's alleged improper actions. *See, e.g., Bridgeport Harbour Place I, LLC v. Ganim*, 131 Conn. App. 99, 118 (2011) (trial court properly granted motion in limine to preclude evidence of alleged lost profits when party failed to submit sufficient, nonspeculative evidence); *Valencis v. Nyberg*, 2013 WL 6698058, at *26 (Conn. Super. Ct. Nov. 21, 2013), aff'd, 160 Conn. App. 777 (2015) ("Inasmuch as [plaintiffs'] testimony is uncorroborated by any other evidence, the plaintiffs have failed to establish probable cause as to these damages for lost interest, income and other lost opportunity costs.").

For example, Counter Claimants only factual allegations concerning the $1,000,000 investment package from DMC Ventures were that Counter Claimants were invited to interview for the investment, that their interview for the investment included, among other things,

12

questions about Counter Claimants' allegations, and that they ultimately did not receive the investment. Counterclaim (ECF No. 14), ¶¶ 35-44, 47. Similarly, Counter Claimants' factual allegations concerning the $100,000 deal with Chronicle Studios only assert that Counter Claimants were "negotiating" a deal with Chronicle Studios, without alleging what these alleged negotiations entailed or the extent of these alleged negotiations. *See* Counterclaim (ECF No. 14), ¶¶ 32-34. Even assuming that these allegations are true, merely being in the running for an investment opportunity or simply beginning negotiations do not establish with reasonable certainty that Counter Claimants would have received the investments in question. It is Counter Claimants' burden to provide evidence beyond surmise and conjecture that DMC Ventures, Chronicle Studios, Luma AI, and Chroma would each have awarded them the alleged opportunities in the absence of any alleged wrongdoing by Mini Studio and Chamcham. The evidence, however, will show that Counter Claimants have not and cannot meet this burden.

II. **The Court should deny Counter Claimants' Supplemental Motion for Prejudgment Remedy because they cannot establish any lawful basis to justify their request that Mini Studio transfer stock into Connecticut.**

Counter Claimants supplemented their initial Application for Prejudgment Remedy with a request that the court issue a prejudgment remedy attaching 22,500 shares of Mini Studio stock and order Mini Studio to transfer such shares into Connecticut. *See* Counter Claimants' Supplemental Motion for Prejudgment Remedy (ECF No. 30). The Court should deny this request for multiple reasons.

First, Mini Studio's stock is *not* an asset of Mini Studio. Rather, Mini Studio's stock is an asset of its shareholders—the individuals that own the stock. The purpose of a prejudgment remedy is to attach assets of the defendant. *See* Conn. Gen. Stat. § 52-278a(d) (defining a prejudgment remedy as a remedy that "enables a person by way of attachment, foreign attachment, garnishment or replevin to deprived the defendant in a civil action of, or affect the

use, possession or enjoyment by such defendant of, *his property . . .*") (emphasis added).

Therefore, a prejudgment remedy provides no basis for an order to Mini Studio to transfer stock into Connecticut.

Second, a request for a party to transfer assets into Connecticut is a request for an injunction that requires a showing of irreparable harm. *See S. New England Tel. Co. v. Glob. Naps, Inc.,* No. 3:04 CV 2075 (JCH), 2006 WL 3388393, at *1 (D. Conn. Nov. 21, 2006) ("the court can only order [defendant] to bring assets into Connecticut upon a finding of probable cause that [plaintiff] would otherwise suffer irreparable harm."); *see, e.g., Roberts v. Triplanet Partners LLC,* No. 3:12CV1222 JAM, 2014 WL 1831022, at *5 (D. Conn. May 8, 2014) (denying motion for preliminary injunction to move assets into Connecticut when plaintiff failed to show irreparable harm). Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate. . . Thus, only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.,* 339 F.3d 101, 113-14 (2d Cir. 2003) (internal citations omitted). Counter Claimants, however, have not pled irreparable harm; nor can they establish any irreparable harm justifying the relief they seek.

III.    **The Court should grant Mini Studio's Cross-Application for Prejudgment Remedy because the evidence will establish probable cause to believe that a judgment will be rendered in Mini Studio's favor on all of its claims.**

Mini Studio's claims include: (1) breach of duty of loyalty; (2) breach of contract; (3) trade secret misappropriation; (4) copyright infringement, and (5) unfair trade practices. The evidence will show that there is probable cause that a judgment will be rendered in Mini Studio's favor on each of these claims.

14

**A.      Mini Studio can establish probable cause that Wansa breached his duty of loyalty.**

The evidence will establish that there is probable cause that Wansa breached his duty of loyalty to Mini Studio. An employee owes his employer a duty of loyalty:

> The relationship of principal and agent implies trust or confidence by the principal in the agent, and the agent is obligated to exercise the utmost good faith, loyalty and honesty toward his principal or employer .... The general principle for the agent's duty of loyalty according to the Restatement is that the agent must act solely for the benefit of the principal in matters connected with the agency.

*Wall Sys., Inc. v. Pompa*, 324 Conn. 718, 731 (2017). The duty of loyalty includes "the duty not to compete[,] . . . the duty not to disclose confidential information[,] . . . [and] the duty to refrain from acquiring material benefits from third parties in connection with transactions undertaken on the employer's behalf." *Id.* at 731-32. The evidence will show that Wansa breached his duty of loyalty to Mini Studio by, among other things: (1) competing with Mini Studio when he assumed control over competing venture The Monster Library between December 2023 and February 2023 while still employed by Mini Studio; and (2) utilizing Mini Studio's confidential information and trade secrets for the benefit of The Monster Library.

**B.      Mini Studio can establish probable cause that Wansa breached his contract with Mini Studio.**

The evidence will establish that there is probable cause that Wansa breached the Employee Confidential Information and Inventions Assignment Agreement (CIIAA). "The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). There Wansa breached Sections 1, 4, 6, and 9 of the CIAA by, among other things, assuming control over The Monster Library and utilizing Mini Studio's confidential information and trade secrets for the benefit of The Monster Library. These breaches have caused Mini Studio to suffer damages including impairment of its

15

goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

### C.    Mini Studio can establish probable cause that the Defendants misappropriated Mini Studio's trade secrets.

The evidence will establish that there is probable cause that Counter Claimants misappropriated Mini Studio's trade secrets, in violation of 18 U.S.C. § 1836 and Connecticut General Statutes §§ 35-50 – 35-58. "To prevail on a [18 U.S.C. § 1836] claim, a plaintiff must prove (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret." (internal citations and quotation marks omitted.) *Roller Bearing Co. of Am., Inc. v. Multicut N. Am., Inc.*, No. 3:18-CV-1212 (SRU), 2023 WL 7277244, at *15 (D. Conn. Sept. 29, 2023). "To prevail on a CUTSA claim, a plaintiff must prove that the information that it claims is protected is of a type that can be considered a 'trade secret' under Connecticut General Statutes § 35-51(d) and that the trade secret was misappropriated by the defendant." *Id.*

Mini Studio has established probable cause as to the existence and misappropriation of its trade secrets. Mini Studio has identified that its trade secrets include its specific, non-public prompts, creative structures, and workflows that determine how its characters are designed, refined, and made visually consistent. Moreover, Mini Studio has asserted how these trade secrets were developed, including through detailed, experience-based creative processes developed collaboratively through internal experimentation, iterative testing, and substantial trial and error. Furthermore, Mini Studio has identified the steps it took to maintain these trade secrets as confidential, including that it required its employees to enter into contracts, such as the CIIAA. Indeed, Wansa, as Mini Studio's Marketing and Creative Director, learned of these

processes while employed by Mini Studio. The evidence will show that Counter Claimants misappropriated these trade secrets to create competing content and operate a competing business.

> **D.    Mini Studio can establish probable cause that the Defendants infringed Mini Studio's copyright.**

The evidence will establish that there is probable cause that Counter Claimants infringed on the protectable expression embodied in Mini Studio's registered PURP work.

"The Copyright Act invests copyright holders with several exclusive rights with respect to their copyrighted works, including the rights 'to reproduce the copyrighted work in copies . . . ; to prepare derivative works based on the copyrighted work; . . . [and] to display the copyrighted work publicly.'" *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 471 (2d Cir. 2019) (*quoting* 17 U.S.C. § 106). "In order to make out a claim of copyright infringement . . . a plaintiff must establish three things: 1) that his work is protected by a valid copyright, 2) that the defendant copied his work, and 3) that the copying was wrongful." *Zalewski v. Cicero Builder Dev. Inc.*, 754 F.3d 95, 100 (2d Cir. 2014). Copying is wrongful when "a substantial similarity exists between Defendants' use and the protectable elements of Plaintiffs' work. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). "[S]ubstantial similarity may be determined by the ordinary observer test: whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." (internal quotation marks and citations omitted.) *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 608 (D. Conn. 2019).

Furthermore, copyright infringement can include the copying of not only the protected work, but also the copying of derivative works. *See Klauber Bros. v. Russell-Newman, Inc.*, 2013 WL 1245456, at *4 (S.D.N.Y. Mar. 26, 2013), *aff'd sub nom. Klauber Bros. v. Bon-Ton Stores,*

17

*Inc.*, 557 F. App'x 77 (2d Cir. 2014) ("The owner of a derivative work may maintain a copyright action against an alleged infringer, based on any infringement of the pre-existing work from which the derivative work is derived."); *see also LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. at 600 ("even where the registered work is an independently copyrightable derivative work, when the same party owns the derivative ... work plus the underlying elements incorporated therein, its registration of the former is sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting") (internal quotation marks and citations omitted).

The evidence will show that Mini Studio's PURP work is protected by a valid copyright under Registration No. VAu001569706. Counter Claimants, who had access to the publicly disseminated PURP work and its derivative works, copied the protected expressions embodied in the PURP work without authorization, including in their infringing video: "Remi & The Lighthouse: The Storm That Changed Everything." Furthermore, a comparison of the infringing video to the protectable elements of Mini Studio's PURP work shows substantial similarities that an average lay observer would recognize as having been appropriated from Mini Studio's PURP work.

**E.      Mini Studio can establish probable cause that the Defendants engaged in unfair trade practices.**

The evidence will establish that there is probable cause that Counter Claimants violated CUTPA. CUTPA prohibits persons from engaging "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Connecticut General Statutes § 42-110b(a). Connecticut courts often consider a three-prong test when analyzing a CUTPA claim:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common

law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Gaynor v. Hi-Tech Homes*, 149 Conn. App. 267, 275 (2014). Under these prongs, "a violation of CUTPA may be established by showing either an actual deceptive practice ... or a practice amounting to a violation of public policy," and all three prongs need not be satisfied. *Id.*

Kevin Wansa, among other things, secretively assumed control over The Monster Library and competed with Mini Studio while still employed by Mini Studio. Moreover, Wansa and The Monster Library engaged in a systematic copying of Mini Studio's content and reproduced the protected, concrete expressions in Mini Studio's copyrighted PURP work. To do so, Counter Claimants unlawfully utilized Mini Studio's confidential processes, and the specific tools and internal methods that Mini Studio used to implement its processes. These acts were immoral, unethical, and unscrupulous and caused substantial injury to Mini Studio. These injuries include usurping Mini Studio's opportunities and harm to Mini Studio's goodwill, reputation, intellectual property, brand, and market for licensing and distribution opportunities.

### F.     The evidence will establish probable that Mini Studio is entitled to a prejudgment remedy attaching up to $10,000,000.

Mini Studio requests that the court grant a prejudgment remedy to secure the sum of up to $10,000,000. The evidence will show that there is probable cause that Mini Studio is entitled to an attachment up to this amount.

First, Mini Studio will provide evidence that Wansa's disloyalty, breaches of his CIIAA, and misappropriation of trade secrets, have caused Mini Studio to lose investments of up to $10,000,000, and diminished its value up to this amount.

Second, Mini Studio will provide evidence that the damages for its trade secret misappropriation claim are up to $8,000,000. More specifically, Mini Studio will explain that it

19

has invested approximately $4,000,000 into developing its confidential and proprietary information. "Because courts take a flexible and imaginative approach to damages calculation in trade secret misappropriation cases, unjust enrichment can take several forms and cover a broad array of activity." *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 809 (2d Cir. 2023) (internal citations and quotation marks omitted). Unjust enrichment can include, among other things, "avoided costs" for time spent in research and development, Defendants' increased profits and business value from using the misappropriated trade secret, and harm to Mini Studio including diminished business value and harm to its first mover advantage. *Id.* The damages may be doubled for willful and malicious misappropriation. *See* 18 U.S.C. 1836(b)(3)(C).

Third, Mini Studio is entitled to at least $150,000 for Defendants' infringement of Mini Studio's registered PURP work. A party is entitled to recover either actual or statutory damages as a result of copyright infringement, and when the infringement "was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). "Willful infringement occurs when the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." (internal citation and quotation marks omitted.) *Prepared Food Photos, Inc. v. Miss Thelma's Rest. LLC*, No. 3:23-CV-258 (KAD), 2024 WL 1856697, at *3 (D. Conn. Mar. 29, 2024). Defendants' unlawful actions, including their systematic copying of Mini Studio's content, are sufficient to establish, at least, probable cause that a judgment will be rendered for the maximum amount of statutory damages.

Fourth, Mini Studio is entitled to disgorgement of all profits and benefits that Wansa received as a result of his disloyal activities in an amount to be established at the hearing. *Hosp.*

*Media Network, LLC v. Henderson*, 187 Conn. App. 40, (2019) ("[A]n employee who breaches the fiduciary duty of loyalty may be required to disgorge any profit or benefit he received as a result of his disloyal activities, regardless of whether the employer has suffered a corresponding loss.").

Finally, Mini Studio is entitled to a prejudgment remedy in the amount of $72,000, the value of the compensation that Wansa received from Mini Studio, due to his egregious and reprehensible conduct. *See Wall Sys., Inc.*, 324 Conn. at 738 ("the court may conclude that all compensation should be forfeited because the 'employee's unusually egregious or reprehensible conduct pervaded and corrupted the entire [employment] relationship.'") (citation omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff/Counter Defendant Mini Studio, Inc. ("Mini Studio") and Counter Defendant Youmna Chamcham ("Chamcham") respectfully request that the court deny Defendants/Counter Claimants' Application for Prejudgment Remedy (ECF No. 23) and Supplemental Motion for Prejudgment Remedy (ECF No. 30). Mini Studio further requests that, contingent in part on the Court's granting of Mini Studio's Motion for Leave to Amend, the Court grant Mini Studio's Cross-Application for Prejudgment Remedy.

21

PLAINTIFF/COUNTER DEFENDANT
MINI STUDIO, INC. AND COUNTER
DEFENDANT YOUMNA CHAMCHAM

*/s/ Damian K. Gunningsmith*
Damian K. Gunningsmith
Federal Bar No. ct29430
Alexander Kosakowski
Federal Bar No. ct31999
CARMODY TORRANCE SANDAK &
HENNESSEY LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950
Phone: (203) 777-5501
Fax: (203) 784-3199
dgunningsmith@carmodylaw.com
akosakowski@carmodylaw.com

22

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2026 a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM-ECF System.

*/s/ Damian K. Gunningsmith*
Damian K. Gunningsmith

23